**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| A TO Z MACHINING SERVICES, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. CIV-09-0477-F |
| APPLIED SOLAR TECHNOLOGY, INC., et al., | ) ) ) | |
| Defendants. | ) | |

**ORDER**

Defendants move to dismiss under Rules 12(b)(1), (2), (3) and (6), Fed.R.Civ.P. (Doc. no. 13.)  The motion has been fully briefed and is ready for determination.

This action alleges four claims:  patent infringement, misappropriation and/or unfair competition, copyright violation, and breach of a settlement agreement.  The product involved is a storm shelter.  The prior action which plaintiff alleges was settled was previously pending before this court as CIV-08-1339-F.

I.  Copyright violation challenged under Rule 12(b)(1).

The copyright claim is alleged in the Third Case of Action of the Complaint. Defendants move to dismiss this claim under Rule 12(b)(1), for lack of jurisdiction. In its response brief plaintiff requests permission to voluntarily withdraw its copyright claim and to dismiss this claim without prejudice.  Defendants state no objection to this proposal in their reply brief.  Accordingly, the court hereby deems the third cause of action voluntarily dismissed without prejudice.  The other arguments raised in the motion to dismiss are now moot with respect to this claim, and this order does not address those arguments.

## II. Personal jurisdiction challenged under Rule 12(b)(2).

Defendants move to dismiss all claims under Rule 12(b)(2), arguing that the court does not have personal jurisdiction over any of the defendants.

Plaintiff has the burden of establishing jurisdiction.  Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1069 (10th Cir. 2008).  A district court has discretion to resolve a motion challenging personal jurisdiction in a variety of ways including by reference to the complaint and evidence offered by the parties.  Id.  Any factual disputes in the parties' evidence are resolved in plaintiff's favor.  Id. at 1070. At this stage plaintiff need only make a *prima facie* showing of personal jurisdiction. Id.  In resolving this issue, the court notes that Oklahoma extends the reach of its long-arm statute to the outer limits of the constitutional limitations imposed by due process. Kennedy v. Freeman, 919 F.2d 126, 128 (10th Cir. 1990).

In support of personal jurisdiction plaintiff argues, among other things, that the allegations and evidence show a settlement agreement resolving the prior action  was finally agreed to, in Oklahoma, by the parties to this action.  Plaintiff relies heavily on a written Settlement Agreement attached to the Complaint which purports to settle CIV-08-1339-F, the action previously pending in this court.  (Doc. no. 1, ex. no. 5, introductory paragraphs.)[1]  The Complaint includes a specific claim for breach of the settlement agreement.  Moreover, the Complaint alleges that "an agreement was formed, and that the proposed Settlement Agreement (Exhibit 5) became operative ("Settlement Agreement")."  (Doc. no. 1, ¶ 2.)  Additionally, plaintiff is correct that the written Settlement Agreement involves the same parties that are involved in the

---

[1]By referring to this document as the "Settlement Agreement," which is how the document is entitled, the court suggests no view about whether this document is effective or whether the parties settled their dispute.  Nothing stated in this order should be interpreted as stating any view on that issue.

instant action.[2]  Nevertheless, to support personal jurisdiction based on a settlement having been finalized in Oklahoma, the court requires a *prima facie* showing that there is a potentially viable settlement agreement and that the agreement was, in fact, made in Oklahoma.[3]

As for where the alleged agreement was finalized, the Complaint includes exhibits which support plaintiff's contention that the settlement terms were finally agreed to in Oklahoma City, Oklahoma.  An email attached to the Complaint was sent from a representative of the defendants, to plaintiff's attorney in Oklahoma City.  The email states:  "We have a settlement.  We are going to fax the agreement to our client for execution and fax it back to you on Monday."  (Doc. no. 1, ex. no. 7.) Furthermore, the text of the Settlement Agreement states that the parties agree venue and jurisdiction are proper in Oklahoma County.  (Doc. no. 1, ex. no. 5, ¶ 15.)  The Settlement Agreement provides that Oklahoma law shall apply to the agreement. (Doc. no. 1, ex. no. 5, ¶ 15.)  A *prima facie* showing has been made that an agreement was made and finalized in Oklahoma.

---

[2]As recited in the Settlement Agreement, the parties to the Settlement Agreement are A to Z Machining Services, LLC; Aqua Marine Enterprises, Inc. d/b/a Safe-T-Shelter; and Brent Mitchell, an individual.  The Settlement Agreement describes Applied Solar Technology, Inc., as an entity which was dissolved on December 31, 2007. (Doc. no. 1, ex. no. 5, ¶ 2.) The Settlement Agreement defines the settling parties as including successor entities of Applied Solar and other entities owned or controlled by Mr. Mitchell.  (Doc. no. 1, ex. no. 5, ¶ 3.)

[3]Arguments which pertain to the viability of the settlement agreement for purposes of establishing personal jurisdiction, also pertain to whether the Complaint states a claim for breach of the settlement agreement.  See Part III, below.  This order consolidates its discussion of the viability of the settlement agreement here, recognizing that different standards apply to determination of a Rule 12(b)(2) issue and a Rule 12(b)(6) issue.  The court determines the Rule 12(b)(2) issue with reference to the allegations and to *prima facie* evidence, while it is limited to a consideration of the pleadings in a Rule 12(b)(6) determination.  This distinction is of limited importance here because the only evidence relied on by the court is documentary evidence attached to, and thus incorporated in, the Complaint.

As for the viability of a settlement agreement upon which plaintiff relies for facts supporting personal jurisdiction, defendants argue that the written Settlement Agreement attached to the Complaint is not executed by all parties.  Defendants point out that the Settlement Agreement states it "shall become effective and binding upon its execution by authorized representatives."  (Doc. no. 1, ex. no. 5, first introductory paragraph.)  The question of whether the prior action was settled per the written Settlement Agreement (or otherwise), despite the fact that the Settlement Agreement is not fully executed, is a fact question involving the intention of the parties.  It would be premature to decide that question now, in the context of this challenge to personal jurisdiction.

Defendants also argue that the alleged, and undisputed, fact that plaintiff dismissed the prior action without prejudice as opposed to with prejudice, contravenes the validity of the Settlement Agreement.   In response, plaintiff notes that the Settlement Agreement only required a dismissal with prejudice after execution of the agreement, so that the dismissal was not a violation of the terms of that agreement. (Doc. no. 1, ex. no. 5, ¶¶ 12-14.)  Recognizing the plan was unusual, plaintiff argues that an email attached to the Complaint (doc. no. 1, ex. no. 8) indicates plaintiff dismissed the earlier case without prejudice, pending execution of the Settlement Agreement and with a plan to dismiss the case with prejudice after the Settlement Agreement had been signed.  (Doc. no. 1, ex. no. 8.)  An email from defendants' representative, also attached to the Complaint, states no objection to plaintiff's plan. (Doc. no. 1, ex. no. 8.)  In these circumstances, the court finds that the dismissal without prejudice does not defeat plaintiff's reliance on a settlement agreement made in Oklahoma as a means of establishing personal jurisdiction over the defendants.

Citing the Complaint's discussion of the parties' respective positions concerning whether there was a valid settlement agreement, defendants also argue that

-4-

the Complaint presumes a counteroffer was made before plaintiff's first settlement offer was accepted and that these allegations preclude the formation of a settlement agreement as a matter of law, defeating plaintiff's ability to rely on a settlement agreement for any purpose.   Defendants' interpretation of the Complaint is too narrow.  The intent of the Complaint is to allege the formation of a final settlement contract while recognizing (and attempting to explain away to some extent) defendants' contrary position on this issue.   The Complaint alleges that the counteroffer was ineffective because the original offer was never withdrawn and was ultimately accepted, as evidenced by the email attached to the Complaint stating the parties "have a settlement."  (Doc. no. 1, ex. no. 7.)  The court rejects defendants' argument that the allegations foreclose an effective settlement contract.

Defendants also argue that the unsigned Settlement Agreement is not valid because it violates the Statute of Frauds.  Defendants cite no authorities to support their position that the presence of an open-ended requirement in the Settlement Agreement requiring defendants to make storm shelters available for inspection means the agreement could not be completed or terminated within one year and invalidates the agreement under the Statute of Frauds.  The court rejects this argument as grounds for any type of dismissal.  The court also rejects defendants' contention that 12A O.S. 2001 § 15-105 (pertaining to the use of electronic records and electronic signatures) compels dismissal for any reason.

Taking the allegations and evidence into consideration, and construing any disputed jurisdictional facts in favor of the plaintiff, a *prima facie* showing has been made that the parties to this action finalized a settlement agreement, in Oklahoma.  A sufficient showing has been made that minimum contacts exist between each of the defendants and this state so as to support personal jurisdiction in this action.  *See*, Minnesota Mining and Manufacturing Co. v. Nippon Carbide Industries Co., Inc., 63

F.3d 694, 698 (8th Cir. 1995) (by negotiating and making settlement contract in state, foreign defendant had purposefully availed itself of the privilege of conducting activities within the forum and had minimum contacts for exercise of personal jurisdiction).[4]

Additionally, separate and apart from allegations and facts regarding the making of the settlement contract, there are other allegations that support personal jurisdiction.   The Complaint alleges that "Defendants contacted Plaintiff in Oklahoma" regarding the storm shelters and that during these discussions "Plaintiff advised Defendants that Plaintiff's shelter was then patent-pending."  (Doc. no. 1, ¶ 9.)  An invoice attached to the Complaint indicates that in 2005, three storm shelters were billed and shipped to "Applied Solar Technology, Inc., Mr. Brent Mitchell," in Alabama, from plaintiff A to Z Machining Service, LLC, in Ponca City, Oklahoma. (Doc. no. 1, ex. no. 9.)  The Complaint alleges that this invoice lists Brent Mitchell as the "representative" of Applied Solar Technology.   (Doc. no. 1, ¶ 9.)   The Complaint alleges that Applied Solar Technology and Aqua Marine Enterprises, Inc. d/b/a Safe-T-Shelter, were affiliated companies owned or controlled, either legally or equitably, by Brent Mitchell.  (Doc. no. 1, ¶ 8.)  These allegations and documents support personal jurisdiction over each of the defendants.

---

[4]Defendants distinguish plaintiff's cases, including Minnesota Mining, on the ground that the parties in those cases had executed their settlement agreement.  That distinction is not especially meaningful here, however.  Minnesota Mining held that where the defendant had purposefully availed itself of the privilege of conducting activities within the forum state by making a contract there, defendant had subjected itself to jurisdiction.  Id. at 698.  Although Minnesota Mining notes that the settlement agreement  was executed in Minnesota, the Eighth Circuit's analysis is principally driven by the fact that the contract "was made" in Minnesota.  Minnesota Mining, 63 F.3d at 698.  In this action, plaintiff has presented prima facie evidence that the parties made a settlement agreement in Oklahoma despite the fact that the Settlement Agreement attached to the Complaint is not fully executed.

To the extent defendants' motion seeks dismissal under Rule 12(b)(2), the motion will be denied.

### III.  Venue challenged under Rule 12(b)(3)

Title 28 U.S.C. § 1391(c) provides that for purposes of venue, a corporate defendant shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.   Thus, the court's determination that personal jurisdiction exists with respect to each of the defendants means that venue is proper with respect to the corporate defendants, Applied Solar Technology, Inc. and Aqua Marine Enterprises, Inc. d/b/a Safe-T-Shelter.  The other defendant is Brent Mitchell, an individual.  Having already found that a *prima facie* showing has been made that a settlement was effective and that Mr. Mitchell was a party to that settlement, the fact that the written Settlement Agreement provides that venue is proper in Oklahoma County is a sufficient basis for concluding that Brent Mitchell is properly before the court for purposes of venue.  To the extent defendants ask the court to dismiss this action for lack of proper venue under Rule 12(b)(3), the motion will be denied.

### IV.  Sufficiency of the pleadings challenged under Rule 12(b)(6)

Defendants argue all remaining claims are deficient under Rule 12(b)(6).

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face.  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007).  To survive a  motion to dismiss under Rule 12(b)(6), a plaintiff must nudge his claims across the line from conceivable to plausible. *Id*.  The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering

-7-

factual support for these claims. <u>Ridge at Red Hawk</u>, 493 F.3d at 1177. In conducting its review, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. *Id.*

## A. <u>Breach of the Settlement Agreement</u>
### (Fourth Cause of Action)

The court begins with the sufficiency of the fourth claim, referred to in the Complaint as the claim for "Breach of Settlement Agreement."

The Complaint alleges the breach of contract claim in a detailed manner. It attaches an unexecuted Settlement Agreement; the Complaint alleges the parties settled their disputes and that a settlement agreement became operative; and the Complaint alleges that defendants have refused to perform their obligations under the parties' settlement agreement. (Doc. no. 1, p. 10, ¶¶ 5, 31.) Despite these allegations, defendants argue that there can be no breach of settlement claim because the allegations foreclose a viable settlement agreement. The court has already rejected defendants' argument in the portion of this order that pertains to personal jurisdiction. For essentially the same reasons that are stated in that portion of this order, the court now rejects defendants' arguments under the standards of Rule 12(b)(6). In the context of this Rule 12(b)(6) evaluation, the court also notes that most of defendants' arguments regarding the invalidity of the settlement agreement depend on fact issues regarding the parties' intentions. These arguments do not support dismissal under Rule 12(b)(6), where all allegations must be taken as true.

The allegations state a claim for breach of a settlement contract. Defendants' motion to dismiss this claim under Rule 12(b)(6) will be denied.

-8-

B. <u>Patent Infringement, and Misappropriation/Unfair Competition</u>

(First and Second Causes of Action)

Defendants' other Rule 12(b)(6) arguments challenge the sufficiency of plaintiff's patent infringement claim, and plaintiff's claim for misappropriation and/or unfair competition.  Defendants' arguments regarding the sufficiency of these claims suggest fact questions.[5]   Additionally, these issues will be moot if the alleged settlement is ultimately upheld.  In these circumstances, the most prudent course is to deny the Rule 12(b)(6) challenges to the first and second causes of action without prejudice to re-urging these arguments at a later stage.

C. <u>Claims Against Mr. Mitchell</u>

Defendants argue that Mr. Mitchell should be dismissed from all claims.

Other than allegations concerning citizenship, the only allegation in the text of the Complaint (as opposed to in the exhibits) which mentions Mr. Mitchell by name, states that "Defendant Applied Solar Technology, Inc. listing Mitchell as its representative purchased at least three shelters" from plaintiff. (Doc. no. 1, ¶ 9.) As already mentioned, the supporting exhibit for this allegation shows billing and shipping to "Applied Solar Technology, Inc., Mr. Brent Mitchell." (Doc. no. 1, ex. no. 9.) Consistent with this documentation, this portion of the Complaint alleges that in August of 2005, "Defendants contacted Plaintiff in Oklahoma seeking to become a distributor of Plaintiff's storm shelters."  The Complaint further alleges that "Unfortunately, the parties were unable to work out a mutually agreeable distributor agreement," after which the three storm shelters were purchased. (Doc. no. 1, ¶ 9.)

---

[5]For example, defendants argue the Complaint only alleges wrongful conduct occurred while a patent was pending as opposed to after a patent had issued.  Although the Complaint is not completely clear on this point, some allegations suggest wrongful conduct after a patent issued.  The moving papers also suggest potential fact issues as to whether there was an improper offer to sell the storm shelters; whether there was notice of the patent by marking of the storm shelters or otherwise; and whether trade secrets were associated with the shelters.

The Complaint alleges that "During discussions, Plaintiff advised Defendants that Plaintiff's shelter was then patent-pending." (Doc. no. 1, ¶ 9.) The Complaint alleges that defendants refused to sell the shelters back to plaintiff when the distributorship negotiations fell through, that defendants copied plaintiff's storm shelters, and that defendants are now selling the storm shelters without paying plaintiff for the shelters. (Doc. no. 1, ¶ 12.)

Although allegations which simply refer to defendants collectively and make little attempt to sort out which allegations pertain to which defendants are often insufficient, that is not the case here.  Here, there are allegations concerning conversations and knowledge on the part of the defendants, and Mr. Mitchell is the only individual defendant.  As pointed out, Mr. Mitchell's name appears in documentation attached to the Complaint.  Read as a whole, the court finds that the Complaint adequately alleges patent infringement, and misappropriation and/or unfair competition, against Mr. Mitchell.

With respect to the breach of settlement claim, the court notes that the Settlement Agreement attached to the Complaint expressly identifies "Brent Mitchell, an individual," as one of the parties to that agreement.  (Doc. no. 1, ex. no. 5, introductory paragraph.) The Complaint states a claim against Mr. Mitchell for breach of the settlement agreement.

Mr. Mitchell's motion to be dismissed will be denied.

## V.  Conclusion

After careful consideration, defendants' motion to dismiss is **DENIED** for the reasons stated in this order.

The third cause of action is hereby deemed voluntarily **DISMISSED**, without prejudice.

The parties are **DIRECTED** to include in their Joint Status Report (to be filed prior to the Status and Scheduling Conference) their joint statement, or, if there is no agreement, their respective statements of position, as to whether the claim for breach of settlement agreement should, for scheduling or any other procedural purposes, be addressed separately from the other claims asserted by the plaintiff.

Dated this 20th day of July, 2009.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

09-0477p003pub.wpd